# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

GREGORY GILREATH,

        :

      Plaintiff,                 Case No. 3:03-cv-118

        :          District Judge Thomas M. Rose

   -vs-                     Chief Magistrate Judge Michael R. Merz

CLEMENS & COMPANY, et al.,

        :

      Defendants.

---

## REPORT AND RECOMMENDATIONS

---

This case is before the Court on post-discovery Motions for Summary Judgment by Defendants Clemens & Company and Donnell, Inc.,  ("Clemens" or the "Company")(Doc. No. 67), by Defendant United Association of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local No. 162 of Dayton, Ohio ("the Union" or "Local 162")(Doc. No. 75), and by Plaintiff (Doc. No. 72).

Plaintiff filed this action in the Montgomery County Common Pleas Court on March 6, 2003, and Defendants promptly removed it here (Notice of Removal, Doc. No. 1).  Defendants asserted this Court had original jurisdiction pursuant to 29 U.S.C. §185(a) because all of Plaintiff's claims were preempted by §185 or, in the alternative, at least the breach of contract claim was so preempted and this Court should exercise supplemental jurisdiction over the remaining claims under 28 U.S.C. §1367. Plaintiff has not contested this Court's jurisdiction by motion to remand or otherwise.

Count I of the Complaint purports to state breach of contract claims against all Defendants. Plaintiff asserts the following breaches of contract:

1.     the Company did not give him a week's vacation after he had worked for a year, despite a pre-

employment promise to do so (Complaint, ¶¶ 16, 58-60).

2.    the Union failed to appoint a union job steward and allowed the Company to file grievances against Plaintiff.  *Id*., ¶ 61.

3.    the Company allowed employees to "bank" hours, reimbursed employees for personal cell phone usage by paying them for overtime hours, did not allow Plaintiff to work overtime hours, and allowed apprentices to work without a journeyman present.  *Id*., ¶62.

4.    the Union knew or should have known about this conduct by the Company, but failed to prevent it.  *Id*., ¶¶ 63-64.

Count II of the Complaint purports to state a promissory estoppel claim related to the one week of vacation.  *Id*., ¶¶ 66-70.

Count III asserts the Union breached its fiduciary duty to Plaintiff by failing to protect his rights and interests.  *Id*., ¶¶ 71-75.

Count IV purports to state a claim under the Ohio Whistleblowers' Protection Act against the Company, asserting that Plaintiff gave proper notice to the Company of "possible violations of State and Federal law."  *Id*., 76-82.

Count V asserts that Plaintiff's lay-off was in retaliation for his reporting violations of law, including federal wage and hour laws, and that such lay-off was therefore in violation of Ohio public policy.  *Id*., ¶¶ 83-91.

Count VII[1] alleges that all of Defendants' acts toward Plaintiff constitute the tort of intentional infliction of emotional distress.  *Id*., ¶¶ 92-98.

The Company has filed a Counterclaim against Plaintiff (Doc. No. 27) which pleads eight claims for breach of fiduciary duty as an employee and various torts.

---

[1]There is no Count VI.

2

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).  Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law.  Fed. R. Civ. P. 50).  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).  If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.  *Id*.  The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323;  *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted).  If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n*., 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal*

4

*Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The facts set forth in this Report are admitted or established by evidence competent under Fed. R. Civ. P. 56(e) and not controverted by opposing competent evidence.

## Analysis

### Count I: Breach of Contract by the Company
### Count III: Breach of Fiduciary Duty by the Union

Plaintiff has been a member of the Union since approximately 1990, although he resigned from the Union during the pendency of this litigation. The Company is a member of the Mechanical Contractors Association of Greater Dayton which has entered into a multi-employer collective bargaining agreement (sometimes hereinafter "CBA") with Local 162 which was in effect at all relevant times. In July, 2001, Plaintiff was referred by the Union hiring hall to the Company pursuant to the collective bargaining agreement. In June, 2002, he was assigned as the Company's foreman at its Central State University project where he worked until he was laid off on September 13, 2002. After the lay-off, the Union filed a number of grievances against the Company on Plaintiff's behalf.

American national labor policy strongly favors the resolution of labor contract disputes by arbitration. *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S. Ct. 1343, 4

L. Ed. 2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80

S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.,*

363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

Despite this policy, the courts have recognized a cause of action for breach of a collective

bargaining agreement under 29 U.S.C. §185(a).  However, such a "hybrid §301" action requires a

plaintiff employee to sue both the union for breach of its duty of fair representation and the employer

for breach of the collective bargaining agreement.    *Vaca v. Sipes*, 386 U.S. 171, 87 S. Ct. 903, 17

L. Ed. 2d 842 (1967).  A plaintiff must demonstrate both violations in order to recover against either

the union or the employer.  *Garrison v. Cassens Transport Co.*, 334 F. 3d 528 (6th Cir. 2003).  In

order to establish a claim of breach of the duty of fair representation, a plaintiff must prove that the

union's conduct was arbitrary, discriminatory, or in bad faith. *Air Line Pilots Assn., Intl. v. O'Neill*,

499 U.S. 65, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991).

The Supreme Court has held that

> the pre-emptive force of §301 [of the Labor Management Relations
> Act] is so powerful as to displace entirely any state cause of action
> "for violation of contracts between an employer and a labor
> organization."  Any such suit is purely a creature of federal law,
> notwithstanding the fact that state law would provide a cause of
> action in the absence of §301.

*Franchise Tax Bd.  v.  Construction Laborers Vacation Trust,* 463 U.S. 1 (1983)(footnote omitted),

*quoting,* 29 U.S.C. §185(a).  The broad preemptive force of §301 has been understood to extend to

all contract claims based on an alleged breach of a collective bargaining agreement.  *See, Int'l*

*Brotherhood of Electrical Workers v.  Hechler,* 481 U.S. 851 (1987).

It is completely unclear to the Court what is it Plaintiff alleges the Union did which

constitutes a violation of its duty of fair representation.  Plaintiff complained to the Union of

violations of the collective bargaining agreement in August, 2002.  He admits that the Union

investigated those claims and he offers no proof that the investigation was inadequate; indeed, his own testimony is that he does not know what investigation was conducted.  After he was laid off, he filed four grievances with the Union on September 24, 2002, regarding the cellphone issue, the overtime/reporting hours worked issue, retaliatory discharge, and the vacation pay.  The Union processed all those grievances up to the arbitration stage.  At that point the cellphone issue was dropped with Plaintiff's agreement and he also agreed that the vacation pay claim was not properly arbitrable.  It is admitted that the Union employed an experienced labor attorney to appear at the arbitration and handle it.  Based on those facts, no jury could reasonably find that the Union violated its duty of fair representation.  Indeed, the Court does not understand what more Plaintiff believes the Union should have done in pursuit of its duty of fair representation.

Having failed to prevail against the Union on his fair representation claim, Plaintiff cannot prevail against the Company on his breach of contract claim (Count I).  But even if the breach of contract claim were separately considered, Plaintiff could not prevail on it.

First of all, his claim for a week's vacation pay is not a claim supported by the collective bargaining agreement.  At one point in his papers, he claims he negotiated for it separately, but employees represented by a union are not permitted to bargain separately for employment benefits. Since the collective bargaining agreement does not support the vacation claim, failure to grant it was not a breach of contract.

Secondly, the arbitrator determined that the other grievances related to the CBA were not well founded.  As the Union notes, Federal courts play only a limited role in reviewing the decision of an arbitrator.  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987). The scope of review is one of the narrowest in all of American jurisprudence. *TVA v. Tennessee Valley Trades & Labor Council,* 184 F. 3d 510 (6th Cir. 1999). As long as an arbitrator's award draws its essence from the collective bargaining agreement, the award is

7

legitimate. *Id.* at 36, (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)). In *Misco,* the Supreme Court reaffirmed its long-standing commitment to the highly deferential standard of review of arbitrator's decisions, a principle which has its genesis in the *Steelworkers Trilogy.*[2] *Interstate Brands Corporation, Butternut Bread Division v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union 135,* 909 F.2d 885, 888 (6th Cir. 1990); *see also, Shelby County Health Care Corp. v. A.F.S.C.M.E. Local 1733,* 967 F.2d 1091 (6th Cir. 1992); *Bruno v. United Steelworkers of America,* 784 F. Supp. 1286 (N. D. Ohio 1992), *aff'd.* 983 F.2d 1065 (6th Cir. 1993). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Assn. v. Garvey,* 121 S. Ct. 1724, 1728 (2001). Plaintiff has offered no good grounds for determining that the arbitrator's decision did not draw its essence from the agreement or was otherwise beyond his authority.[3]

With respect to Plaintiff's claim that the Union failed to appoint a union job steward on the Central State project, the uncontradicted evidence presented shows that the CBA required that a journeyman be appointed to that position, that Plaintiff was the only journeyman on the job, and that as a foreman he was precluded by the CBA from holding the union steward position.

Plaintiff claims the Union improperly allowed the Company to file grievances against him.

_____

[2]*United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960) (collectively the "*Steelworkers Trilogy*").

[3]Plaintiff filed a separate action to vacate the arbitrator's award. The Magistrate Judge has, on motion of the Union and the Company, recommended that that action be dismissed because Plaintiff lacks standing to bring it.

Those grievances were all withdrawn before arbitration and Plaintiff therefore suffered no damage by the fact that the Union received the grievances.

Plaintiff also asserts that the Union advised a contractor not to hire him.  As evidence of this, Plaintiff relied in his deposition on a tape-recorded conversation between himself and Greg Hobbs. In the course of that conversation, Mr. Hobbs stated the reason he had not called Mr. Gilreath for work was because he had already hired more foremen from the hiring hall than was permitted by the CBA and the Union had told him he had to stop doing so.  Plaintiff offers no proof that this was not a correct interpretation of the CBA or that the Union was not obliged to enforce the limitation on hiring foremen.

## Count II: Promissory Estoppel Against the Company

In Count II, Plaintiff purports to state a claim for relief in promissory estoppel against the Company for the week's vacation or vacation pay which he claims he was promised before starting employment.

Upon the authority noted above, this claim is pre-empted by §301.  Promissory estoppel is in the nature of contract and the courts have firmly held that persons governed by collective bargaining agreements cannot rely upon separate promises relating to the employment, regardless of whether the claim is made in contract or in promissory estoppel.  *Ulrich v. Goodyear Tire & Rubber Co.*, 884 F. 2d 936 (6th Cir. 1989).  Even if the claim were not preempted, Plaintiff could not prevail on a promissory estoppel claim under Ohio law because he was not an employee at will, but employed pursuant to contract.  *Kelly v. Georgia-Pacific Corp.,* 46 Ohio St. 3d 134, 545 N.E. 2d 1244 (1989).

**Count IV: Ohio Whistleblowers' Act Claim Against the Company**

In Count IV, Plaintiff purports to state a claim for relief against the Company under the Ohio Whistleblowers Act, Ohio Revised Code § 4113.51, et seq.  To prevail on this claim, Plaintiff must prove:

(1) that he became aware of a violation of a state or federal statute or ordinance or regulation of a political subdivision that the Company had authority to correct;

(2) that he reasonably believed that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony;

(3) that he orally notified the Company of the violation; and

(4) that he subsequently filed with the same officer or supervisor of the Company a written report of the violation in sufficient detail to identify and describe the violation.

Ohio Revised Code § 4113.52.

The conduct on which Plaintiff relies is the banking of hours and allowing apprentices to work without journeymen (Plaintiff Depo. at 126-131).  Plaintiff claims he believes that these are felonies, but offers no suggestion as to why that belief is reasonable.  Furthermore, Plaintiff did not comply with the requirement of a written report about the violations.  He relies on the grievances, but those were not made to the persons to whom he claims he made the oral reports, but rather were filed with the Union and they were filed after his termination.  During his deposition, he claimed that he gave a letter regarding the violations to Donny Lightcap, a former business agent for the Union. Then on the next day of testimony he claimed instead that he handed it to Todd Elson, who is not the person to whom it is addressed.  He does not aver that he ever mailed it.  Even assuming that there is a genuine issue of material fact about whether the letter was received by the same supervisor to whom the oral notification was given, Plaintiff has not established that the letter itself is in

10

sufficient detail to satisfy the statute.

Finally, the arbitrator, to whom the question was submitted at Plaintiff's request in the grievances, determined that Plaintiff was not terminated in retaliation for any report he made of violations under the Whistleblower Act.  As noted above, the CBA calls for submitting such issues to final and binding arbitration and national labor policy calls for great deference to the arbitrator's decision.  Plaintiff has shown no reason why the arbitrator's decision should not stand.

## Count V: Discharge in Violation of Public Policy Against the Company

Plaintiff claims in Count V that his discharge violates Ohio public policy.  This cause of action in tort was created by the Ohio Supreme Court in *Greeley v. Miami Valley Maintenance Contractors*, 49 Ohio St. 3d 228, 551 N.E. 2d 981 (1990).  Only a person who is an employee at will can pursue such an action.  *Ferguson v. Lear Corp.*, 155 Ohio App. 3d 667 (Ohio App. 6th Dist. 2003).  Since Plaintiff was not an employee at will, but rather covered by a collective bargaining agreement, he cannot maintain an action under the *Greeley* doctrine.

## Count VII[4]: Intentional Infliction of Emotional Distress Against All Defendants

In Count VII, Plaintiff purports to state a claim for relief for intentional infliction of emotional distress against all Defendants.

This claim is preempted by §301.  *Mattis v. Massman*, 355 F. 3d 902 (6th Cir. 2004).

Even if the claim were not preempted, Plaintiff has insufficient evidence to allow a jury to

---

[4]As noted above, there is no Count VI.

11

determine that any of the Defendants intentionally subjected him to severe emotional distress. In recognizing the tort of intentional infliction of emotional distress in Ohio, the Ohio Supreme Court adopted Restatement of the Law 2d, Torts 2d, §46, and comment d to that section which reads:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033, 1053 (1936).

*Yeager v. Local Union 20,* 6 Ohio St. 3d 369, 453 N.E. 2d 666, (1983). In order to recover on an action for the intentional infliction of serious emotional distress four elements must be proved: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and 4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person can be expected to endure it. *Miller v. Currie*, 50 F. 3d 373 (6th Cir. 1995); *Pyle v. Pyle,* 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 103

(Cuyahoga Cty. 1983) (citation omitted); *Bellios v. Victor Balata Belting Co.*, 724 F. Supp. 514, 520 (S.D. Ohio 1989).

Simply stated, none of the actions of the Company or the Union of which Plaintiff complains could be properly found by a jury to constitute outrageous conduct. The arbitrator found, in a decision entitled to great deference by this Court, that Plaintiff was laid off for lack of work. Plaintiff admitted in his deposition that his employer conducted himself as a gentleman in carrying out the lay off and thereafter.

## Conclusion

There are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law. The Court should order judgment dismissing the Complaint herein with prejudice.

March 18, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d

435 (1985).